## COMMONWEALTH *versus* HARVEY HARNDEN.

An auctioneer cannot delegate his power to sell by auction ; but he may employ another person to use the hammer and make the outcry under his *immediate direction* and supervision ; nor will his occasional absence during the sale, subject his servant or substitute to the penalties of the statute against selling by auction without a license.

On the trial of an indictment it appeared, that the defendant, being requested to sell pews by auction, declined selling unless under the direction of a licensed auctioneer, and afterward he proceeded to sell the pews by the consent and as the agent of such an auctioneer, who remained in the meetinghouse some time, but it did not appear that he remained there during the whole of the time that the sale continued. It was *held*, that whether the auctioneer made the sale by the defendant as his servant, or the defendant made it himself, having obtained the auctioneer's permission for the purpose, as a cover by means of which to evade the statute, was a question of intention to be determined by the jury.

THIS was an indictment against Harnden for unlawfully selling certain real and personal estate by way of public auction, not being a licensed auctioneer.

At the trial in the Common Pleas, before *Strong* J., it was testified that in the years 1835, 1836, and 1837, in January, Harnden was employed by the unitarian society at Fall River, as a licensed auctioneer, to sell and let the pews of the society by auction, which he has uniformly done, according to the custom there, without making any charge for his services. The pews were let in January 1837 for three months, but were held over the time ; and on the 3d of June were again let, and two or three of them were sold, by auction, agreeably to an advertisement of a committee of the society, which advertisement did not name the auctioneer who was to sell. At the time of this last sale (which was the subject of the indictment) Harnden was requested to sell, but he declined selling, unless under the direction of a licensed auctioneer, as he said his license had run out. Application was then made to Cromwell

Chace, a duly licensed and qualified auctioneer, and Harnden proceeded to sell and let the pews by the consent and as the agent of Chace, who was in the meetinghouse some time during the sale, but whether he remained there during the whole of the time that the sale continued, did not appear. Harnden was a duly licensed auctioneer in the town of Fall River at the time of all the several sales above mentioned, except the last.

The jury were instructed, that if they believed the foregoing facts to be proved, they should find a verdict of guilty ; which was done accordingly. To this instruction Harnden excepted.

*Battelle* and *Williams*, for the defendant.

*Warren*, (District Attorney,) for the Commonwealth.

MORTON J. delivered the opinion of the Court. This indictment is founded on the Revised Statutes, *c*. 29, § 7. This section provides, that " if any person, not licensed and qualified as an actioneer, shall sell or attempt to sell any real or personal estate whatsoever, by way of public auction, he shall be deemed guilty of a misdemeanor, and shall be punished by a fine not exceeding five hundred dollars for each offence."

The indictment alleges that the defendant, "not being li censed and qualified as an auctioneer, did sell and let, at auction," certain pews in a house of public worship. And we are called upon to decide, whether the facts reported show the defendant to be guilty of a violation of this prohibition of the statute.

Whether the property sold was, or was not, liable to the auction duty, is immaterial to the decision of this question. The statute has other and higher objects in view than the collection of a tax. It intrusts the authority of auction sales, which is peculiarly liable to abuses and presents opportunities, if it does not hold out encouragement, for the practice of fraud and imposition, only to men, who for their characters for probity and fair dealing may be deemed, by the municipal authorities, safe depositories of such power. Sales at auction were regulated, and prohibited to all but licensed auctioneers, long before any auction duty was imposed. *St.* 1795, *c*. 8 ; 1814, *c*. 46 ; and 1815, *c*. 29. The prohibition is general and extends to property which is not, as well as that which is, subject to the auction duty. It admits of no exception.

Did the defendant make the sale in question, or was it made by Chase, who was duly authorized to make it?

Special trust and confidence is placed in an auctioneer, which he cannot delegate. Yet this does not require that he should make all the sales in person. He may employ all necessary and proper clerks and servants. And in the course of a protracted sale, he may, undoubtedly, without a violation of law, relieve himself by employing others to use the hammer and make the outcry. But this should be done under his immediate direction and supervision. We do not mean however by this, that he must be actually present during the whole time of the sale. An occasional absence would not subject his servant or substitute to the penalties of the statute. If the auctioneer really conducted the auction and made the sales, he might, within his authority, call to his aid such assistance as might be needed to transact the business in a convenient and proper manner; but he clearly could not appoint deputies, to make sales at different places and times in his absence. This would be inconsistent with his duty to manage his auctions fairly and to render under oath a true account of his sales. It would, too, enable him to employ those to carry on the business who might not be deemed, by the proper authorities, suitable persons to be intrusted with the power.

The real question in the present case is, whether Chace, the auctioneer, made the sale by the defendant as his servant, or the defendant made the sales himself, having obtained permission, for the purpose, as a cover, by means of which to evade the provisions of the statute. This depends upon the intention of the parties and is a question falling peculiarly within the province of the jury. The defendant may be either guilty or innocent, consistently with all the facts reported; and whether the one or the other, a jury alone have a right to determine. This was not left to them; for the judge ruled and instructed them, that if they believed the facts reported, they must find the defendant guilty. This was incorrect, for it necessarily implied that his innocence could not be reconciled with them. For this cause a new trial must be granted, that the question, upon the principles above stated, may be submitted to a jury. And the case is remitted to the Common Pleas for that purpose.